19-1680. Mr. Byrne, you requested three minutes for rebuttal time, so you may proceed. Thank you, Your Honor, and may it please the Court, Michael Byrne, on behalf of the National Organization of Veterans Advocates and the Paralyzed Veterans of America. In enacting the AMA, Congress intended to give veterans... Mr. Byrne, could we, given our experience with the prior case and the many issues involved, can you start off by addressing the standing issue briefly? Sure. I was going to get there very quickly. Okay. And I'd like to begin by addressing the question that Judge Chen asked in the last case. We think that whether based on this Court's decision in Gober or the additional evidence that both organizations submitted, that NOVA and PVA have associational standing. And I'm happy to address the evidence that we submitted, but I did want to start by saying a word about Gober. You know, we recognize that there is language in Gober that can be read broadly, but we think that what's ultimately going on in Gober is that the Court's decision is following from the same principle that this Court recently acknowledged in the Figenics case and which the D.C. Circuit set forth in the Sierra Club case, which is that as the D.C. Circuit explained, in many, if not most, cases, the petitioner standing to seek review of administrative action is going to be self-evident and no evidence outside the administrative record will be necessary. And what's going on in Gober and is equally true here is that where the rules that are being challenged are not esoteric rules that affect only a narrow, unusual subpopulation of veterans, but rather are broad, structural rules that govern the procedures that are applicable to all veterans who are bringing supplemental or initial claims through the system, we think in those circumstances it's self-evident that organizations which represent hundreds or thousands of veterans who are pursuing claims or their counsels will have members who are adversely affected by those rules and therefore have standing. And we think that the... But, Judge Klemner, you don't have a case that stands for that proposition? Well, I think the Sierra Club case itself sort of stands for the proposition that in many, if not most, cases, standing is going to be self-evident. And I think what even the government acknowledges is that where the individual seeking to establish standing is essentially the object of the rule at issue. In those circumstances, they'll have standing. Now, both parties recognize here that, at minimum, veterans are the object of the rules at issue here. And because our membership includes hundreds or thousands of veterans, many of whom are bringing claims for benefits and pursuing those claims now under the AMA, we think that our membership includes individuals who are the objects of the rules and therefore have standing. And as a result, the associations have standing as well. But we've also pointed to specific factual evidence to support our claims of standing here. And I think, you know, as an initial matter, I would encourage this court to look at that. Your members are essentially lawyers, right? Our members are not... So within the two organizations... Isn't there an affidavit that you have 107 or something? How many members do you have that are veterans? That's right. So with respect to NOVA, there are over 100 members of NOVA that are themselves veterans. For PVA, there are thousands of members who are veterans. But even within NOVA's membership, we have pointed to affidavits from NOVA members who are currently pursuing claims under the AMA, including Mr. Atik and Mr. Gross. But our evidence goes further than that. We also point, for instance, to PVA members who have been directly adversely affected by the rules at issue. For instance, in the declaration of Jamie Rudert at Paragraph 7, we point to Clarence Noble, who is an individual who has appealed a claim to federal court. And while that appeal was pending, received new evidence and wanted to file a supplemental claim based on that evidence. But because of the first rule that's being challenged here, 3.2500B, he was unable to bring that supplemental claim as soon as possible. We've also pointed to individuals like Ms. Morden and Mr. Schwanker who, because of the intent to file rule, are being denied the earliest effective date for their claim. What individuals have you pointed to with regard to 3.2500DE? Sure. So with respect to D&E, I point to a couple things. First of all, we point to the affidavit of Mr. Chisholm, who is a NOVA member who represents clients who are affected by that rule. So Mr. Chisholm has a client, for instance, who is in the Board of Veterans' Appeals lane, basically opted for that lane before he was represented by Mr. Chisholm, and is now stuck in that lane after 15 months, would like to switch into the supplemental claim lane, has evidence that could bring a speedy resolution to the case, potentially.  That client is not a member of NOVA, as far as I'm aware, but we think that under the standard... I'm sorry? Oh, well then, you're about to answer the question of why you think there's an associational standing for Chisholm. Yes, Your Honor. So under the Kaplan and Drysdale case, we do think that Mr. Chisholm would have standing in this instance, because Mr. Chisholm's own financial interests are affected by the rule, because, of course, many of the individuals who are represented in these claims, including Mr. Chisholm's clients, the arrangement is a contingency arrangement, and as a result, when a veteran is... That basis would be because of Chisholm without regard to his client, right? Well, it's because of his relationship with his client. He would lose some fees, so he has standing. That's right. So it's basically the way that the court has looked at this would be to say, does he have an Article III injury? And, of course, the loss of fees would be sufficient to establish that Article III injury. And then the second part of the question is, from a prudential standpoint... In Kaplan and Drysdale, it was like an admitted loss of fees. Well, it's true that in Kaplan and Drysdale, they indicated that it would be a certainty that if the money at issue was recovered, that the counsel would therefore benefit. But I don't think that the court's opinion turned on that certainty. And, of course, standing is not about... Standing has never required certainty of recovery. You have to move on. What is the specific... Do you have a specific veteran with regard to your challenge to 3.156B? With regard to that, we don't. But, in a sense, that's unsurprising because the issue that arises from that is one that follows from the fact that, you know, an individual is not aware of the fact that the VA has constructively received evidence. And so it's essentially unsurprising that we can't point to a veteran who is aware that they are being harmed by that because the whole problem with the rule is that it basically prevents a veteran from becoming aware that VA has constructively received that evidence. I want to make sure that I attempt to address the merits. So, with this panel's permission, I'll turn there next. There's a number of rules that we challenge in this case. I'd like to at least make sure I get through the first couple. With respect to the first rule, which is 3.2500B, that's a rule by which the VA forbids individuals who are vindicating their right to appeal to federal court to file supplemental claims during the pendency of their federal court appeals. And we think that that's incompatible with the text of the AMA, which envisions that individuals would have the right to bring supplemental claims as soon as the adjudication of their initial lane choice is completed. And we get that from two components of the statute. Isn't the problem created by the effective date statute, 5110? Well, first of all, I think that 5110 does address when an effective date would be. If you just look at 5110, if you look at subsection D and E, there is a protection of the effective date for appeals from the BVA and from the CABC. Your problem is that there's not a subsection F and a subsection G that deal with the federal circuit in the U.S. Supreme Court. Well, we think, if anything, that that helps us, because we think what it envisions is that the VA would expect that individuals who have supplemental evidence would be proceeding with their supplemental claim after completion of the notice of disagreement route, after the BVA renders the decision, or at most after the CABC renders the decision. But we think that 5104C provides strong evidence that the expectation of Congress was that individuals could bring their supplemental claims immediately following the adjudication of whatever their initial lane was. Mr. Byrne? Yes. This is Judge Chen. Wouldn't it be inevitable that any supplemental claim that a claimant would desire to file after a BVA adjudication and then appealing that to the federal courts, wouldn't that be a supplemental claim that's necessarily filed under 5104CB? Supplemental claims filed more than one year after the decision of the agency's original jurisdiction? So I think one... Isn't that right? I mean, how would it ever be in federal court inside of one year of the initial denial? No, that's right. So that's one way to read it. One way to read it would be to say that Section B there clearly envisions that you could bring a supplemental claim while a federal court appeal is pending. Well, it doesn't quite... Wait a second. It doesn't quite say that, but you are right to the extent that 5104CB is unconditional in that sense in that it just says at any time, you know, in any case more than one year has passed, you may file a supplemental claim, period. That's right. But we think there's an even easier way... Yeah, I... Right. I mean, I think, you know, VA reads that provision basically to be applicable only in the instance in which you did not first satisfy the conditions in 5014CA. And ultimately, we think that there's an easier way to get to this answer just by looking at the text of 5014CA2, which sets forth two things. One, that when you bring a claim within one of the lanes, you can't bring a claim, a supplemental claim until that the initial lane has been adjudicated. And it's followed up by language... Could I just stop you there? Let's assume that a veteran pursues the route after he's been denied by the agency of the original jurisdiction, and he files a NOD, and he goes to the BVA. And let's assume, hypothetically at least, that the BVA renders its decision within one year from the date that the NOD was filed for one day to the original decision. And so let's assume the veteran then has the right to file a supplemental claim. There's no question about it, right? Yes, and in that... Let me finish. Yes. So the veteran says she was. I'm kind of surprised that the BVA could act that fast, but they did. And so I got my final decision at the BVA, and what I'm going to do is file a supplemental claim. So he files a supplemental claim, and the next day he files a notice of appeal to the Court of Appeals for Veterans Affairs. And so his case goes up, and it goes on review. That's the law, 5104C, permits that, does it not? That it permits him to go up on appeal to the CAVC at that point? It permits him to file a supplemental claim, then pursue judicial review in a federal court so that his proceeding will be going in front of the federal court at the same time that his supplemental claim will be adjudicated back at the RO. Yes, that's right. Hold on just a second. Let me think. Sure, I'm sorry. The statute permits that on its face, right? But the regulation would bar such, you know, if you were at a later point in time. What's the rationale for allowing one and denying the other? We agree, Your Honor, that there is no basis to permit one and not permit the other based on the accident of how long the BVA decision would take. So let me just ask one other question. Can you figure out what's going on here? There's obviously this whole problem of your client having his rights to vindicate himself through judicial review at our court, the Supreme Court, being interfered with, in my judgment, as a creature of the effective date statutes. It could have been cured. The government seems to recognize, the Veterans Affairs seems to recognize that something smells in Denmark, as Shakespeare said. And so in their brief, they said, hang on, everybody. We're going to fix this with a regulation. And so by the time the government comes in a little later, they say, whoops, we haven't been able to do a regulation. But what we're going to do is give you a non-binding policy directive that is issued by the Secretary to all the agencies of original jurisdiction, saying go ahead and just preserve the effective date for folks that go on to the federal circuit or Supreme Court. Right? Isn't that what that policy memo says? Yes, that's correct. Does this cure the problem? When you have an agency that is backpedaling away from its regulation while at the same time trying to defend it as a matter of law, what does that do to us in our review authority under 502? Sure. I think, well, I think two things. It does not affect, I think it does not affect this court's jurisdiction because it doesn't cure the problem in its entirety. While it does protect the effective date, it doesn't alter the fact that individuals are still being prevented from filing a supplemental claim as soon as possible. And so individuals who have to await the resolution of their federal court appeal process will still lose, you know, will still not receive their benefits from ultimately filing supplemental claims for several years. So there's no cure to that process. But I think what it does do is the fact that the government has backpedaled essentially with respect to a key component of the rule suggests that the rule as originally promulgated did not effectively consider all of the issues and should be vacated for further consideration. Okay. Mr. Byrne, we've used up all your rebuttal time. Let's go ahead and hear from the other side, and I'm going to restore you back to three minutes of rebuttal, okay? Appreciate that, Your Honor. Thank you. Yes. So let's hear from Mr. Grimaldi now. Good morning, Your Honors. May it please the court, we respectfully request that the court dismiss or deny this petition. And if Your Honors would like, I can start off by speaking with standing, because that's been the first issue that's been addressed today. And the point that counsel has made is that there is this concept that standing should, in these situations with associational standing, should be self-evident in most cases. If that is the situation here, why is it when evidence has been submitted by these organizations, they're still unable to demonstrate that their individual members would have standing to sue on their own? This is certainly not a case that standing is self-evident, if that's even a concept, this idea that self-evidency is sufficient, because when the evidence was actually submitted, it did not show that standing was available for these particular individuals. What about PVA, what about Rudert, Paragraph 7? I apologize. Okay, I'm sorry. This is relating to the Regulation 3.2500B, the ability to file a supplemental claim while judicial review is pending. And as I understand it, there was a Mr. Rudert, who at Paragraph 7 talked about a Clarence Noble, who had appealed a claim to federal court and also then received new evidence and wanted to file a supplemental claim during dependency of federal court review, but was denied that ability. So that would be an example of somebody that's been harmed, that's a member of PVA by this regulation denying the ability to do judicial review. Right, Your Honor. And I guess the problem that we would be having with the general, I believe Mr. Rudert is the general counsel, if I'm remembering correctly, is submitting an affidavit regarding the actions of another individual and what they can or cannot do. He's sworn under oath that he could go to jail. Correct. If he is misrepresenting Noble, he would go to jail, possibly. And that's a fair point, Your Honor. To me, why don't they just take Rudert on his face as being an accurate and truthful representation of what Noble, the member, is saying? And I agree with you, Your Honor. Given that, why has not PVA made standing with 2500B? Well, Your Honor, I would say that this would suffer from the same problems that we found with Mr. Schwenker and Ms. Morton's declaration. It's not enough to just allege that there is something they want to do, but we want to see some sort of, we think the court should see some sort of evidence supporting that this action can be undertaken. You know, for example, you have a situation with Mr. Schwenker and Ms. Morton. What do you mean by showing that the actions could, what more would Noble have to say to satisfy your passion to show that something could be happening? Tell me the words that need to be added to Noble, and then I'll know what you're talking about. Well, I guess some identification of the new evidence that he has received. For example, when we took a look at the claims files of Ms. Morton and Mr. Schwenker, we didn't necessarily agree that they could undertake the actions that they say that they want to undertake. Now I'm not saying that they're being untruthful in their declarations. What I'm saying is that we very much disagree with the past. You're getting real close to it. Oh, I understand. And I want to make very clear. That's why I want to like explicitly say, Your Honor, that we are not taking that position and we don't want to take that position. You're saying it's not enough for Noble to say, I have new evidence. You're saying, what is the evidence identified? That's correct. Yes. You don't believe him when he says he has new evidence? We want to make sure the new evidence is sufficient, is new and material to support a supplemental claim, which is a legal question, Your Honor, not a factual one as to whether or not Mr. Noble has. That doesn't mean you can, you can bring a new material evidence claim that would pass, you know, muster for, you know, a challenge to symbolic and yet have it determined. I'm sorry. The judge said that wasn't your material. Correct. And I, I just want, I'm pushing you a little bit on this because it's something that's going to come out of the hearing tomorrow. But you are requiring a degree of specificity with regard to the evidence that goes well beyond a general Obama on your own. They have the evidence. Are you not? Yes, Your Honor. I think that that's a fair way to phrase it. We are asking for specificity as opposed to statements of intent. So that there is something in the record to show that the individual not only wants to undertake the action that they want to, but they say they want to undertake, but actually can meet the requirements of taking that action. Once the. Merit of the action. Yes, it gets very close to the, to the merits, Your Honor. It does. And we, we, we can see that. And that's why we do point out in our, in our briefing that PVA, unlike NOVA has declarations that are very close to being able to, to support the evidence. Whereas the, the NOVA declarations are talking about in theory, these rules potentially hurting all veterans. So thus hurting the individual veteran, Mr. Atticus submitted a declaration. So it is about specificity as opposed to just generalized statements. And where does that come from? The law on associational standing provides some degree of specificity because the organization has to have a member that they identify who is going to allege personal harm. Beyond that, the personal harm is defined by, by friends of the earth. And is it wrong? I'm sorry, Your Honor. I didn't hear that last time. Yeah. What I'm saying is that you are asking for a very rigorous standard of personal harm under what I believe is you're saying friends of the earth, Lujan is the test for finding personal harm. Right. And looking at Lujan, Your Honor, it does say that the object of the provision here is, if I'm remembering it correctly, not to replace the conclusory allegations that are in the complaint with, with just conclusory allegations in the affidavit. There is this intent in Lujan to provide more than just conclusory statements. It's, it's, you know, supporting evidence as well, Your Honor. And we would also say that this is consistent with laid law, which looked not only about whether the individuals had concerns about pollution, but, uh, we're actually looking at the activities regarding the actual pollution itself and the harm from the pollution. So it's more about concern and less about concern and more about whether there's actual harm. And we think that these, this type of evidence would show that actual harm. So let me ask you a question on, uh, 3, 2, 5, 0, 0, D, pardon me, uh, B last, the last sentence, which are the, uh, filing of a supplemental claim once you are in front of a federal court, uh, you heard my, uh, statement earlier. I read, uh, 5104 C a veteran who has timely gone from the RO to the, on a nod to the BBA. And he would be lucky enough to get a decision by the BBA within one year would be free to file a supplemental claim. Isn't that correct? Yes. If it's within one year, absolutely. Okay. That's correct. So then he files a supplemental claim. Shortly after filing a supplemental claim and within the timeframe, he files a notice of appeal to the court of appeals for veterans affairs. So his case goes in front of a federal court. His in this hypothetical, his supplemental claim will be adjudicated administratively while he is being adjudicated in the federal court, right? Yes. Hypothetically. That law, but that, that law is positive. That is, that is a real life possibility provided by the statute. Your regulation will prohibit the filing of the same notice, the same supplemental claim. If the veteran had filed his notice of appeal to the CBC before he filed a supplemental claim and, and would deny the filing of that claim. What's the difference? I mean, if the statute allows what the rule denies, then the rule can't survive. Well, it absolutely can. Your Honor. The point of the rule is to increase efficiency in the system. Now, what the rule, the AMA does. What efficiency, what's the difference? I mean, let's assume my, in my hypothetical that in my case, that where you had your supplemental claim filed and then you, uh, uh, later filed your notice of appeal and the federal circuit takes the case up in time. And the fact that in the next guy that comes along, two days later does the same thing, except he foolishly files his notice, his supplemental claim after he filed his notice of appeal. Well, the two cases are going to be adjudicated simultaneously. It's exactly the same. What's the difference? Well, your Honor, there's, there's two parts. I would like the government, the statute allows the inefficiency. The statute allows the co-pendency nothing in the nothing in fed and Supreme Court law denies a parallel administrative proceedings and judicial proceedings at the same time. So what's the rationale? How can, I don't see how your regulation can survive when it, when it is trying to bar something that's statute allowed. What, well, your Honor, I started saying there's two things and now I think there's actually three things to respond to. Thank you. Um, so the, the first are is that the AMA itself is a line drawing exercise. It is an attempt to decrease, uh, the inefficiencies that existed in the last system, the inefficiencies that this court is well aware of. Now, did the AMA eliminate every possible inefficiency? No, because what it is is it's balancing act. It's a balancing act between decreasing inefficiencies and balance, making sure, you know, checking on the rights of the individual claimants. And sometimes you have to balance those off what Congress and VA has done here is, is drawn a line in the sand and given some rights that occur can occur within the first year. And then some rights that cannot occur in the first year. And the points that I would like to make about those is first that one year mark is based on the statutory text. And I'll just want to list these off before I get into them. Secondly, the first argument is that the AMA is an imperfect statute, eliminate some inefficiencies, but not all. One of the inefficiencies that it failed to eliminate was the right to have co-pending federal and, uh, judicial, administrative and federal judicial review. I'm under my hypothetical. That's an inefficiency. It failed to cure. Right? Yes. That would be your first argument is the statute, uh, couldn't cure all the inefficiencies and it left one behind. So what's the next argument. I'm sorry, your Honor, but that's not an accurate characterization of my argument. I would like to add to it. So the court gets a better explanation of it. The, the point of it, your Honor is a balance. It's not an imperfect statute. It is a good statute, but it has line drawing in it. Just like the lane switching rule, which is very similar. Why can you change lanes within the first year, but not after the second one seconds, uh, you know, into the second year. And the reason simply is, is that the Congress and VA are allowing for some inefficiencies in the system to protect the individual. I buy that the statute can certainly draw lines. And what my discussion with you, I think has proved is that they drew a line that allows, uh, bars, co-pendency of an administrative and federal in some instances, but doesn't bar it in others. Correct. Now my question is what's the rationale for barring one and approving the other, the regulation, because on its face, it is inconsistent with the fact, but one aspect of the statute doesn't the regulation have to explain why it made this distinction. And your Honor, I would, this goes into the second point, I guess, your Honor is that this is based in the actual text of 5104 C, because if you look at 5104 C, it talks about actions being able to undertake in, uh, before, in the first year in paragraph a in paragraph B, it talks about, uh, the ability to, you know, the different lanes and talks about sequentially not in succession, but it limits it to the first year. So it's Congress that wrote in this requirements that, um, things occur sequentially within the first year. It is not VA who has created this rule. Uh, excuse me, that concept VA has issued a provision or a rule and not in, uh, implementing that concept itself. Um, you know, as to why, so yesterday we finished and you and I were having a discussion. So on point two, which is really calling on point one, then you're saying basically the distinction is that Congress says it's okay to have inefficiencies as you call them in the first year, but not thereafter. That, that is part of the answer. And there's also, uh, text in the final rule that I would point you to. Yes. Pardon me, the chess square. Uh, there's, there's, um, language on appendix page eight, talking about the specific comments that were addressed in concurrent election and talking about how it is inefficient, uh, to have. And I think this court understands that it's inefficient to have two different bodies reviewing something at the same time. Sure. And how it would be confusing to have parties, you know, the, this court reaching a conclusion to one case while the supplemental claim is being adjudicated another, perhaps reaching a different, different, uh, reason right there. The VA is understanding that there's an inefficiency in the system that they want to address, but the, not to use up all your time. It just seems to me that where your argument is taking you on this one, because you admitted that my hypothetical is correct. So that the statute permits a circumstance, which the rule, if you file later to the federal, to the appeals court, the bar, the basic answer is that, uh, Congress recognized that there in the first year, you could have some inefficiencies that would be borrowed after the first year. Yes, Your Honor. That's a good summary of the answer. Mr. Grimaldi, this is judge Chen. Uh, as I look at the statute, I do see that Congress put some restrictions in on your ability to file supplemental claims inside of that first year. Uh, that is to say, whenever you've got say a board appeal pending. Uh, um, but when I look at the other type of supplemental claim in 5104 CB, um, when I don't see any conditions, any restrictions, any regulations on a claimant's ability to file a supplemental claim after that first year has expired. Um, and so when I look at 5014 CA and compare it to 5014 CB, it, to my eyes, strongly indicates that after that first year expires, um, the claimant has an unfettered right to file a supplemental claim. And it, it doesn't matter if there's something pending somewhere else in on review. Um, it, whether it's at the veterans court or the federal circuit or the Supreme court, um, where in the statute should I look to where I would see words that would tell me, Oh, I'm, I'm misunderstanding 5104 CB. There actually are some restrictions on, um, timing and ability to file a 5104 CB supplemental claim. Well, your Honor, I think that I believe it was judge Clevenger. Um, when speaking with my colleague, I hit the nail on the head that said the real problem here is about effective dates. Um, a claimant would prefer to have their supplemental claim revert back to the original, uh, effective date. Sure. And I know that under 5110, that there are a couple of windows of where you can file a supplemental claim, uh, and, and enjoy the earliest effective date. And that's the one year after a BVA decision and a one year after a CAVC decision. And anytime outside of that, that's outside of one year from the initial denial, uh, you will not get an, uh, enjoy that same effective date for supplemental claim. But nevertheless, I'm looking for words in the statute. That, uh, I should look at that will convince me that there are certain conditions on when you can file a 5104 CB supplemental claim. And I don't see it right now. And I guess my, my question, my misunderstanding of your question might be is that I don't see a supplemental claim being different in one way or another. There's always a supplemental claim is a supplemental claim, your Honor. If you look at 5104. My point is if you went ahead and got a denial from the board and adverse decision, and then you appealed that to the CAVC, um, and then got an adverse decision from the CAVC, we're certainly well more than a year after the decision of initial denial. And so you're well within your rights to file a supplemental claim, but you're also well within your rights to appeal that adverse veterans court decision to the federal circuit. And so what in the statute is depriving the claimant from being able to do both of those things in my hypothetical? Well, your, your Honor in the, in the hypothetical, what prevents, uh, and what we, we, how we talk about, um, it would be 5104 C preventing doing things at the same time, because 5104 C discusses. So you're just talking about 5104 C a right 51. And I'm talking about 5104 C B. I see. I agree with you that there are certain restrictions on what a claimant can do vis-a-vis a supplemental claim in a, in the context of 5014 C a that is the actions you can take within one year of the initial denial. Now I'm talking about a different context. And Mr. Gimaldi just stated, stated differently. Why doesn't 5104 C B allow the veteran to file the supplemental claim that is barred by your regulation? And I'm going to, I'm going to apologize to your honors. This entire conversation that we've been having, I thought you were talking about 5104 B not C B and was very confused because I was looking at it. We can, we can, we can go back and, and review what you've said in that light, but I'm just asking, I think what Chen has been asking in simple terms is when you read 5104 C B anytime after a year after the original AO, somebody can file a supplemental claim. That's what it says, right? That's correct. And what that's. Okay. So then take your regulation and take the situation where a veteran has pending before the CA, pending before a federal court for the CBC or us or the Supreme Court files a supplemental claim. Your rule bars. Correct. Now how can your rule bar that when the statute allows it? Well, your honor, we would say that you would read 5104 C A and B together. And since a two talks about everything being, things being done sequentially that would also apply in the B scenario. So what would happen in how we would envision? You're asking us as a matter of statutory interpretation, I can take a statute that has two subsections, one that deals with everything that happens within one year of a decision and one that deals with everything that happens after a year. And you're asking us to take some of the provisions out of A and stick them into B. Correct. And I can tell you why I'm asking you that your honor. If you look at the, you realize it's a reach, but go ahead. Well, yeah. But if you look at the history here, your honor, perhaps you'll agree with us that it isn't a reach. The history that we discussed in our briefing shows that when the VSOs and commentators on the proposed rules raised this concurrent issue to Congress, excuse me, I sit on the proposed rules I'm talking about on the AMA, when the commenters on the AMA rose issues of, of concurrent problems, going to court and filing a supplemental claim, the resolution was not for Congress to revise 5104 C to make it clear that you could have concurrent federal courts and a supplemental claim, but rather to add the effective date protection to 5110, which allows you to file your supplemental claim after going to the veterans court. So right there, it shows congressional intent that we are talking about a situation where you want to proceed sequentially, not concurrently, no matter how you're filing that supplemental claim. Otherwise Congress would have revised the language of 5104 C to, to clarify what their intent was to allow concurrent. They didn't do that. They just added effective date protection. And that's what the history shows. It shows the congressional intent. Okay. Counselor, at some point we're going to have to, to move on. Any other questions from my colleagues? Real quickly. Yes. But I'll let, I've got here one question under 5401 C B, the M more than one year after the decision, isn't it possible for a veteran to file more than one supplemental claim? You know, honestly, your honor, I don't know. Supplemental claims for issues within claims. I mean, you're right. I'm just trying to test your whole notion about efficiency and all this stuff about this fancy new statute. As I read B, and you can just tell me if I'm wrong or tell me if I'm right, B would allow a veteran to have more than one after a year, more than one supplemental claim going at the same time. Correct. Because one was filed before the year was up and one was filed. No, after a year. Well, you know, well after a year. Well, the VA still has a duty to assist when there's a supplemental claim. I'm just testing your whole notion because you keep saying there are these efficiencies and co-dependency and we don't want two things happening at the same time. It's perfectly clear within the one year timeframe, you have to go at your options one at a time. And no one disagrees with that administratively. All I'm asking is after a year, isn't it possible for the veteran to have, he's no longer restricted by the requirement that they can only have one at a time? Well, he can only file a supplemental claim. My only question and why I'm hesitating and responding to you, Your Honor, is I'm not sure that that would be a separate supplemental claim as opposed to asking for more duty to assist from the VA on the supplemental claim that's already been filed. No, he's asking for different supplemental claims. Well, then it might actually be a different issue. So it might be able to pick a different lane on it, Your Honor, because the lanes that you go in go per issue, as opposed to per overall claim. But yes, I agree with you in general that once you file that supplemental claim after the year, whatever you've written on it is not the end of what you can do with your issue. You can continue that supplemental claim. Thank you. Okay. My question relates to 3.155, the intent to file supplemental claims. Assume for the moment that the court believes there is standing established by PVA on that one. Also assume that the court concludes that this particular regulation, it's arbitrary and capricious to treat intent to file for supplemental claims differently than for intent to file for initial claims. You, in your brief, have indicated that VA plans to propose a regulation. Who knows when? I'm trying to figure out what to do because we have to write a decision. We could very well just straight up vacate the regulation. But if you were to tell me that the VA was about to issue some kind of notice in the coming days, officially rescinding that regulation, then, well, maybe that would make my life easier. What I'm asking is, you indicated over half a year ago there was an intention to do something about this regulation and take care of it. As far as I know, it's still sitting there on the books. Therefore, as far as I know, it's still being applied. What is going on? Can you give me the current status of when you actually plan on rescinding that regulation? Unfortunately, I wish I had more to tell you today. That was our hope. Okay, so the court has to move forward then? The court has to move forward because the VA apparently won't? Yes, Your Honor. I would just like to add that the VA has a lot on its plate right now with the AMA. And if within the next few weeks before a decision comes out from Your Honors, if we have any status update, first thing we'll do is let you know. That doesn't really help us. Let me ask you this question. You will tell us that the VA is presently enforcing that regulation. They're refusing to grant intensive files. I apologize, Your Honor. I don't have the answer to that. I don't know what they are. From the United States government, that doesn't do me any good at all. You knew this was coming. You're unprepared. It makes a world of difference to the veterans out there about whether or not the agency has said, well, we're not going to enforce this regulation, so we're going to allow no intensive file and preserve an effective date. Don't we have to assume that the agency is applying this rule? Yes, Your Honor. We are unable to tell you whether every single regional office is not doing it, unlike the other rule that we have pointed to in our briefing. Let's put it this way. There is no instruction to the agency to cease application of the rule. There's no policy letter such as you showed us with respect to the other issue. Yes, that's exactly where I was going, Your Honor. I think that I'm actually agreeing with you here that, unlike the other rule, we don't have a policy letter to show you, so I can't definitively state that there's someone not out there. And I understand that the position this court is put in because of that. Okay. I think that answers all the questions. You basically don't want to concede error on the merits, right? That was my understanding, yes. The VA, from the initial conversations in this case, yes. There is no concession of error with the actual regulation itself, but we will be replacing it. Any other questions? Okay. We thank Mr. Grimaldi for his argument. Mr. Birney, you have three minutes of time. Thank you, Your Honor. Let me briefly address 3.2500B again, and then I'm going to very quickly address two of the other rules. I think this court's argument has underscored some of the difficulties with the rule at issue here and why it should be vacated. But I just want to say two other things on that score. We think that the statutory language here is clear, that Congress intended that both within a year and outside of the year time frame, that individuals would have the right to file supplemental claims without regard to whether they were pursuing federal court appeals. But if this court thinks that there's any ambiguity in that, I think it's important here that the court would employ the pro-veteran canon to read any ambiguity in favor of the veteran. Here, I understand that the government now to acknowledge that there are circumstances in which individuals could concurrently be pursuing federal court appeals and supplemental claims. We think the right reading is that Congress intended that with respect to all if there's any ambiguity, we think it should be read in favor of the veteran. And similarly, you know, it's worth noting that it has been settled law for at least 20 years that individuals could pursue essentially the equivalent of a supplemental claim, the motion to reopen in the old system while pursuing their federal court appeals. Congress legislated against the backdrop of that system. If it did not speak clearly to doing away with that, and we don't think there's any clear indication of that, we think that's a further reason why the statute should be read as we suggest and the rule should be vacated. Let me briefly touch on two of the other rules. With respect to 3.2500D&E, the lane switching rule, here the agency has basically drawn a line in the sand that says before one year, you can switch lanes and you can switch into any other lane. But after one year, you can't protect your effective date, and the only lane that you can switch into is the supplemental claim lane. And we think that that is arbitrary here because the agency really didn't provide, just as in the rule that I think was discussed in the MBA case, the agency provided no reasoned decision, no reasoned explanation for why they drew that line at a year. Nowhere is there an explanation of why it's, you know, why you can do it before a year and why not afterwards. And I think that as a practical matter, this results in significant inefficiencies and harms to veterans. And I think that's best indicated by the specific facts that are outlined in the Chisholm declaration where he talks about one of his clients who, before he was represented by Mr. Chisholm, elected to proceed directly to the BVA via a notice of disagreement. Eventually, he acquired representation by Mr. Chisholm and now 15 months have passed since the plan before the BVA. With this court's indulgence, I'll just finish my answer if that's okay. Yes, go ahead. Thank you. So 15 months have passed and under the rule at issue here, he can no longer withdraw from the BVA and instead switch to the supplemental claim lane, even though that would more expeditiously secure him his benefits. And so he's in a very odd situation where if he does nothing and waits for the BVA to issue a decision, then his effective date will be protected. If he then proceeds under 5110A2D, if he waits for the BVA decision and then files a supplemental claim, his effective date will be protected. But if he were to switch lanes earlier, his effective date would not be protected. And so what that does is it creates significant inefficiencies because it forces individuals to consume agency resources through the completion of the BVA process, even though it would be better for the veteran to switch into another lane, which would get them their results quicker. So it's inconsistent with the goals of timeliness and efficiency. And because the agency didn't wrestle with any of those important concerns, we think that the rule should be vacated and sent back. Okay. This is a good place to stop. We thank Mr. Byrne and Mr. Grimaldi for their arguments. This court's going to go have a five-minute recess. We'll be back at 12.01. And I ask everybody to be back ready to go at that time. Thank you.